**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**RODNEY L. TAYLOR**                                                                    **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO. 2:09-cv-231KS-MTP**

**HARTFORD CASUALTY  INSURANCE COMPANY**                         **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#31]** and a

Second Motion for Summary Judgment **[#114]** filed on behalf of the plaintiff and on a

Motion for Summary Judgment **[#60]** filed on behalf of the defendant.  The court,

having reviewed the motions, the responses, the pleadings and exhibits on file and

being otherwise fully advised in the premises finds that Taylor's first motion should be

denied, that his second motion should be granted and that Hartford's motion should be

granted in part and denied in part consistent with the findings of the court contained

herein.  The court specifically finds as follows:

### FACTUAL BACKGROUND

Plaintiff Rodney L. Taylor and his younger brother, Scott Taylor, started a rental

equipment business and, based on a recommendation from a CPA, Rodney and Scott

Taylor applied for and received a Limited Liability Certificate of Formation on July 6,

2007.  Their attorney prepared an Operating Agreement, but the Taylor Brothers never

signed it.  Their L.L.C. is TAYLOR BROTHERS RENTAL, LLC.

The Taylor Brothers were using their personal vehicles to make deliveries and pull equipment trailers, so in July 2008 they acquired a 2000 Ford 1-ton truck to assist in the hauling and delivering of rental equipment.  Because they had purchased business insurance from Hartford Casualty Insurance Company (Hartford), they added to their insurance policy coverage for the 2000 Ford 1-ton truck that bore VIN#1FTNX20F9YEE29105.  The brothers allege that they specifically increased the amount of Uninsured/Underinsured Motorist ("UM") coverage to $1,000,000.00.  The policy, bearing number 45UUN QZ0901, was issued to Taylor Brothers Rental, LLC d/b/a Taylor Brothers Rental and was renewed from August 29, 2008 through August 29, 2009.  It was issued by Hartford Casualty Insurance Company (auto portion) and by Hartford Fire Insurance Company (commercial general liability portion). The Hartford Casualty policy included an endorsement for Mississippi Uninsured Motorists Coverage.

On February 1, 2009, Rodney L. Taylor, while driving his own personal automobile, a 2001 Chevrolet Tahoe, insured by Mississippi Farm Bureau Casualty Co., was involved in an automobile accident at the intersection of Highway 11 and Eastabuchie Road.  As a result thereof, Taylor was rendered paraplegic.  The accident was a result of the negligent operation of an automobile by Patrick K. Hemphill who thought he had approached an intersection controlled by a four-way stop sign.  Taylor's medical bills presently exceed $250,000.00, and his future medical bills and expenses are estimated by him at $2,079,000.00.

At the time of the accident, Rodney Taylor and his brother were operating their rental business at 4202 W. 4th Street, Hattiesburg, Mississippi, and 5584 Highway 42 Bypass, Hattiesburg, Mississippi.  Taylor alleges that he now attempts to work part time

but that he is very limited in what he can do, and the hours per day he can work.  As a result of the Taylor's asserted disability, the Taylor Brothers closed their business operation on 4202 W. 4th Street, Hattiesburg, Mississippi.

 On August 5, 2009, Taylor made a claim for uninsured/underinsured motorist benefits under policy number 45UUN QZ0901 issued to Taylor Brothers Rental, LLC. On August 21 and 24, 2009, counsel for Taylor was informed that because Taylor (who Hartford contends was not the Named Insured) was not occupying the LLC owned and covered Ford truck (i.e. the vehicle listed in the subject policy) at the time of the accident, he was not entitled to uninsured/underinsured motorist benefits under the terms of the Hartford Casualty policy.

On September 17, 2009, Taylor's attorney indicated that claim was also being made for medical payment ("medpay") benefits.  On October 8, 2009, a formal denial letter was issued to Taylor. The denial letter was again based on the assertion that Taylor was not operating a covered vehicle at the time of the accident under Hartford Casualty's applicable policy provisions.  Taylor makes much of the fact that in the denial letter Hartford omits reference to that portion of the Named Insured, "DBA TAYLOR BROTHERS RENTAL."  The court finds that such an omission was inconsequential.

On November 10, 2009, and in the subsequently filed Amended Complaint, Taylor filed suit asserting a breach of contract claim as well as the alleged wrongful denial of his claim.  Recovery is requested in the form of uninsured/underinsured motorist benefits, medpay benefits, interest, punitive damages and *Veasley* damages (e.g. extra-contractual damages awarded in instances where there is a failure to pay on an insurance contract without an arguable reason).

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d

265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the

nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).


## ANALYSIS

The vehicle driven by Hemphill, the negligent driver, had $50,000 of liability coverage applicable to it and Taylor's personal Tahoe had $25,000 of UM coverage applicable to it.  Thus, this case concerns an issue of coverage with the ultimate consequence of "stacking" of insurance coverage (specifically uninsured/underinsured motorist coverage) under Mississippi law as Taylor's damages appear to far exceed the available coverage.  Since, this is a diversity action, the court is of course bound to apply the law of the forum state.  *Erie Railroad Co. v Tompkins*, 304 U.S. 64, 58 S.Ct.

-6-

817, 82 L.Ed. 1188 (1938).

## **IS THERE UNINSURED/UNDERINSURED COVERAGE?**

The Mississippi Motor Vehicle Safety Responsibility Law requires every auto liability insurance policy to provide to "the insured all sums which he shall be entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle." Miss.Code Ann. § 83-11-101(1).  This coverage is mandatory, unless expressly declined in writing.  *Id.*  The Act also affords protection against underinsured motorists, defining an underinsured vehicle as one in which "the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorists coverage."  Miss. Code Ann. § 83-11-103(c)(iii).  It is assumed for purposes of this opinion that Taylor's damages exceed the limits of Hemphill's liability coverage.

The right to stack and other coverages as hereinafter discussed are subject to the injured party's classification as a Class I or Class II insured.  *Glennon v. State Farm Mut. Auto. Ins. Co.*, 812 So.2d 927, 929-33 (Miss.2002) (citing a litany of Mississippi precedent and stating "these classifications are firmly embedded in our law and are the basis for determining the rights/remedies of injured parties and the liabilities of insurance companies").  Persons included in Class I consist of the "named insured, and residents of the same household, his spouse and relatives of either, while in a motor vehicle or otherwise."  *Glennon*, 812 So.2d at 931 (quoting Miss.Code Ann. § 83-11-103(b) (1999)) (emphasis omitted).  Persons included in Class II consist of "any

person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." *Glennon*, 812 So.2d at 931 (quoting Miss.Code Ann. § 83-11-103(b) (1999)) (emphasis omitted).

The coverage afforded Class I insureds extends "to all circumstances when a member of the first class is injured by an uninsured motorist.  This broad protection to members of the first class arises by virtue of the phrase 'while in a motor vehicle or otherwise.' " *Glennon*, 812 So.2d at 931 (quoting *Stevens v. United States Fid. & Guar. Co.*, 345 So.2d 1041, 1043 (Miss.1977)).  *Accord Gov't Employees Ins. Co. v. Brown*, 446 So.2d 1002 (Miss.1984).

Taylor maintains that either the subject insurance policy or the Act entitles him to recover uninsured/underinsured motorist benefits in this instance.  However, "[i]t is a fundamental requirement that before a person is entitled to recover uninsured motorist coverage, they must first prove that they are an insured under the insurance policy or the uninsured motorist statute." *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So.2d 866, 871 (Miss. 1995).  *See also Ulrich v. Shelter Mutual Insurance Company*, 1999 WL 33537211, *5 (N.D. Miss.).  Hartford asserts that in this instance, Taylor has not and cannot show that he is an insured as defined in the uninsured motorist portion of the Hartford Casualty insurance policy or by application of the Mississippi Uninsured Motorist Statute.


**Named Insured**

Taylor first asserts that he is a "named insured" under the Hartford policy and

-8-

entitled to stack as a Class I insured.  It is uncontroverted that the "named insured" in

the Policy is Taylor Brothers Rental, LLC, d/b/a Taylor Brothers Rental.  Mississippi

Code Annotated § 83-11-103(b) defines "insured" as:

> . . . the named insured and, while resident of the same household, the
> spouse of any such named insured and relatives of either, while in a
> motor vehicle or otherwise, and any person who uses, with the consent,
> expressed or implied, of the named insured, the motor vehicle to which
> the policy applies, and a guest in such motor vehicle to which the policy
> applies, or the personal representative of any of the above. The definition
> of the term "insured" given in this section shall apply only to the uninsured
> motorist portion of the policy.

Mississippi law specifically requires a unique definition of "insured" for purposes

of uninsured motorist claims.  Hartford asserts that the Casualty policy fully incorporates

that definition and defining "insureds" for purposes of recovery pursuant to the

uninsured motorist portion of the policy as follows:

> If the Named Insured is designated in the Declarations as:
>
> > 1.  An individual, then the following are "insureds":
> > a.  The Named Insured and any "family members".
> > b.  Anyone else "occupying" a covered "auto" or a temporary
> > substitute for a "covered auto". The covered "auto" must be
> > out of service because of its breakdown, repair, servicing,
> > "loss" or destruction.
> > c.  Anyone for damages he or she is entitled to recover
> > because of "bodily injury" sustained by another "insured".
> > d.  The person who uses a covered "auto" with the Named
> > Insured's expressed or implied consent.
>
> > 2.  A partnership, limited liability company, corporation or any other
> > form of organization, then the following are "insureds":
> >
> > a.  Anyone <u>"occupying" a covered "auto"</u> or a temporary
> > substitute for a "covered auto". The covered "auto" must be
> > out of service because of its breakdown, repair, servicing,
> > "loss" or destruction. (Emphasis added)
> > b.  Anyone for damages he or she is entitled to recover
> > because of "bodily injury" sustained by another "insured".

      c.  The person who uses a covered "auto" with the Named
      Insured's expressed or implied consent.
      d.  The Named Insured for "property damage" only.

Hartford asserts that its Casualty policy clearly contemplates a situation in which the LLC could make a claim as a named insured.  Likewise, a member or employee of the LLC, when using the covered/listed automobile (i.e. the Ford truck), could have a reasonable expectation of potential coverage for personal injury if such were sustained under proper circumstances.  However, Hartford contends that is not the situation here where Taylor was not an individual using or occupying a <u>covered automobile</u> and he was not the Named Insured.

Taylor argues that Hartford failed to follow the UM statutory language, and then limited the "while in a motor vehicle or otherwise" coverage to only individuals.  By tweaking its policy language, Taylor asserts, Hartford creates another class of persons. Persons comprising unincorporated associations of individuals are now required to occupy the covered vehicle, simply eviscerating, the "while riding in a motor vehicle or otherwise" coverage.  Taylor contends this is true even if the unincorporated association is the "Named Insured."

The result, according to Taylor, is to hide coverage from hundreds if not tens of thousands of persons who comprise any unincorporated aggregation of people and permits Hartford to pretend that policies issued to unincorporated associations have no Class I insureds, unless they occupy the covered vehicle.  Thus, Taylor argues, this clearly circumvents the mandated statutory language applicable to whomever is the "Named Insured", and narrows and extremely restricts who may be entitled to the benefit of the "while riding in a motor vehicle or otherwise" coverage.

Taylor goes on to make a novel argument regarding the alleged ambiguity in the Hartford policy surrounding the definition of "named insured."  Taylor agrees that "[u]nder the Mississippi Uninsured Motorist Act, the 'named insured', can clearly refer to persons or things . . ."  Indeed, under Mississippi law, the term "person" applies to artificial as well as natural persons.  *See* Miss. Code Ann. § 1-3-39.  Further, the Mississippi Supreme Court has equated limited liability companies with artificial persons.  *Coleman v. State*, 947 So.2d 878, 882 (Miss. 2006).  Mississippi Code Annotated § 79-29-108 plainly states that a Mississippi Limited Liability Company possesses the same power to do all things necessary to carry out business affairs, including, without limitation: the power to sue and defend lawsuits; lease, acquire, and improve real and personal property; sell, pledge, or lease real or personal property; enter into contracts; and to do any acts not inconsistent with law in furtherance of its business affairs.

The procuring of insurance by Taylor Brothers Rental, LLC was indisputably an act in furtherance of its business.  Neither Scott Taylor nor Rodney Taylor, in their personal or individual capacities, contracted for insurance with Hartford.  Instead, within its statutory rights, Taylor Brothers Rental, LLC had the power to contract and conduct business affairs in the same capacity as an individual pursuant to § 79-29-108, and did so.

Taylor correctly states that any ambiguity in an insurance policy exists when the policy can be interpreted to have two or more reasonable interpretations.  *See Ins. Co. Of North America v. Deposit Guaranty Nat. Bank*, 258 So. 2d 798, 800 (Miss. 1972); and *State Farm Mut. Auto Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981).

-11-

However, the court finds that the "named insured" as set forth in the applicable insurance policy and relied on by Hartford Casualty in making its coverage determination is not, in any way, more restrictive than the statutory language construing who or what constitutes a "named insured" for purposes of the Mississippi Uninsured Motorist Statute, nor is the definition ambiguous.

All portions of the policy list Taylor Brothers Rental, LLC d/b/a Taylor Brothers Rental as the "Named Insured."  Nowhere in the policy are either Scott Taylor or Rodney Taylor even mentioned.  The policy terms pertaining to uninsured motorist coverage do not designate either of them, either by name or by class, as insureds under the circumstances here presented when discussing "named insured."  "Generally, the 'named insured' refers only to the name actually appearing on the insurance policy." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So.2d 550, 551 (Miss. 1998). Rodney Taylor was not a named insured.

Next, Taylor argues that an individual may contract for insurance using a trade name or the name of a corporation under which he or she is doing business.  He then cites to several correct hornbook principles concerning the subject.  If a partnership is named as the insured, coverage extends to the members of the partnership as well as the partnership itself.  3 *Couch On Insurance* § 40:4 (citing *Steinwinder v. Aetna Cas. & Sur. Co.*, 742 So. 2d 1150, 1152 (Miss. 1999)); and *Continental Cas. Co. v Pro Machine 2007 PA Super 18*, 916 A. 2d. 1111, 1120 (2007).  A policy issued under the trade name of an individual is viewed as if issued under his given name.  2 *Auto. Liability Ins.* 4th §§ 21:6.  A trade name is not a legal entity.  *Patrevito v. Country Mut.*

-12-

*Ins. Co.* 118 Ill. App. 3rd 573, 74 Ill. Dec. 259, 455 N.E. 2d 289 (3d Dist. 1983).  Where

a policy is issued to an individual operating a business under a trade name, the "Named

Insured" is an individual.  7 *Couch on Insurance* §110:5 (3d ed. 1997).  When

automobile insurance is issued in an insured's trade name, coverage for claims by that

individual's relatives have usually been sustained.  Schermer, Automobile Liability Ins. §

40.02 [2], at 40/13 - 40/14 (3d ed. 1995).

Hartford contends that, Taylor's limited liability company "is a separate legal

entity" "and was created subject to the provisions of the Mississippi Limited Liability

Company Act."  *See* Hartford Answer (213-214).  Taylor submits that the statutory

authorization for establishment of limited liability companies, is no different from those

code sections used to establish Partnerships or Limited Liability Partnerships as

contemplated by Mississippi law.  He argues that they are all unincorporated, and the

Hartford policy relegates all people comprising any uninsured entity to a new class of

insured, one that cannot claim the benefit of the "while riding in a motor vehicle or

otherwise" language.

However, Taylor overlooks a key fact – the Hartford Casualty insurance policy

was not issued to an individual, but instead, to a Mississippi Limited Liability Company

or LLC.  Specifically, the policy was issued to Taylor Brothers Rental, LLC d/b/a Taylor

Brothers Rental.  Neither Scott Taylor nor Rodney Taylor were identified as insureds

anywhere within the subject portions of the insurance policy.

Membership status in business entities in Mississippi entails differing rights and

liabilities.  A member of a limited liability company is not the same as a member of a

partnership.  However, Hartford argues that where most beneficial to him, Taylor would

undertake to expand or contract the boundaries which distinguish corporations, partnerships and limited liability companies as set forth by statute and in case law.

Taylor maintains that because no operating agreement was executed, Taylor Brothers Rental, LLC d/b/a Taylor Brothers Rental is somehow a partnership. The Mississippi Limited Liability Company Act does not require the execution of an operating agreement. MSPRAC-ENC § 49.11. Thus, the fact that Scott Taylor and Rodney Taylor allegedly did not execute an operating agreement does not mean that Taylor Brothers Rental, LLC, is essentially a partnership as claimed by the plaintiff. Taylor Brothers Rental, LLC specifically filed a Certificate of Formation with the Mississippi Secretary of State and conducted its business as an LLC. If the circumstances were reversed and personal liability was sought for actions of the LLC, then the Taylors would certainly claim the protections from personal liability afforded them by the LLC.

Taylor further attempts to make a distinction between a business entity that is incorporated and one that is not (*i.e.* an LLC such as Taylor Brothers Rental) for purposes of recovery under Mississippi uninsured motorist law. The only Mississippi case cited by Taylor in support of this theory is *Champluvier v. State*, 942 So.2d 145 (Miss. 2006) which dealt with an LLC in the context of criminal embezzlement and applied Miss. Code Ann. § 97-23-19 rather than the Mississippi Uninsured Motorist Statute. The *Champluvier* court concluded that the referenced criminal statue, which criminalized embezzlement from a corporation or individual, did not permit one to be indicted for embezzlement from an LLC. Thus, the case went off on the specificity of the criminal statute and the necessity of the precise tracking thereof in the indictment

and the proof.  This case is not applicable under the facts of this case.

Pursuant to Mississippi law, a limited liability company permits owners of unincorporated entities to have the same benefits as shareholders of corporations. MSPRAC-ENC § 49.1 (citing Miss. Code Ann. §§ 79-29-101 *et seq.*).  Also beneficial to members of an LLC is that unlike members of a partnership who may be held jointly and severally liable for the debts of the partnership, members of an LLC are not proper parties to a proceeding against the LLC (except in certain derivative actions).  *See* Miss. Code Ann. §§ 79-13-306; 79-29-305.  Furthermore, each member of an LLC is shielded from loss over and above the contributions he has made to the LLC (unless the certification of formation specifies otherwise).  Miss. Code Ann. § 79-13-503.

Taylor correctly argues that "Limited Liability Company" and "Domestic Limited Liability Company" means an entity having one or more members that is an unincorporated association that is formed and existing under this chapter Miss. Code Ann. § 79-29-103(j).  Taylor also points out that the Mississippi's Limited Liability Company Act was drafted from provisions borrowed from the Mississippi Limited Partnership Act and the Mississippi Business Corporation Act, with additional guidance drawn from the Prototype Limited Liability Company Act as well as the LLC statutes of other states. *Jackson*,  Encyclopedia of MS Law, §49:2.

Taylor also asserts that a partnership is not an entity distinct from its members. *Blackwell v. Reid*, 41 Miss. 102; *Francis v. McNeal*, 228 US 695, 33 S.Ct. 701, 702, 57 Lawyers Ed. 1029, as cited in *Wisdom v. Guess Drycleaning Co.*, 5 F. Supp. D.C. (Miss. 1934).  Mississippi has held that a partnership is an aggregation of its individual

-15-

members and not a separate entity.  *Scott Co. v. Enco Const. Co.*, 264 So. 2d 409 (Miss. 1972).  Taylor also points out that members of a limited liability company, by statutory definition, must be persons, Miss. Code Ann. §79-29-301(n), and by statutory definition, the association is necessarily, unincorporated.  Miss. Code Ann. § 79-29-103(j).  Taylor concludes that an LLC is just another form of statutorily authorized, unincorporated association.  While that may be true, an LLC is not a partnership and is recognized as a separate legal entity apart from its individual members as pointed out above.

Hartford argues that since an LLC is an entity that offers the same protections to its members as a corporation in the context of liability, the treatment of an LLC for purposes of the subject uninsured motorist policy provisions and the Mississippi Uninsured Motorist Statute should be equated to that of a corporation.  This court agrees.  In 1999, Mississippi followed the majority of jurisdictions in concluding that in situations where the only named insured is a corporation, uninsured motorist coverage is not extended to a corporate shareholder, solely due to his status as a shareholder. *Steinwinder v. Aetna Casualty and Surety Co.*, 742 So.2d 1150, 1154-55 (Miss. 1999).

In *Steinwinder*, Joe Steinwinder, Sr.  was owner of Steinwinder Enterprises, Inc. The sole named insured under the business auto policy was Steinwinder Enterprises. Steinwinder, Jr.,  when on business for the company, was in an accident and was not in a covered vehicle.  Steinwinder made a claim under the company's uninsured motorist coverage, which Aetna denied.

After analyzing both the policy language and the Mississippi Uninsured Motorist Statute, the Supreme Court upheld Aetna's denial stating that anyone "sophisticated

-16-

enough to do business in the corporate form should be charged with the knowledge that corporations are . . . a separate legal entity and that in order to extend coverage to others absent unusual circumstances . . . such others, corporate or human should be named." *Id.* at 1155.

More recently, a Mississippi federal district court, after looking at both the policy before it and the Mississippi Uninsured Motorist Statute agreed with *Steinwinder*. That court found that "[w]hen a corporation is a named insured, the corporation and the individual occupying the covered vehicle as defined by the policy is insured under the UM endorsement." *Employer's Mut. Cas. Co. v. Normmurray Springs Bottled Water, Co., Inc.*, 2010 WL 1238429, *2 (N.D. Miss.).

This court can find no principled reason to ignore the status of the LLC as a separate legal entity authorized to conduct business in its own name as do other corporate forms of business entities. Taylor's argument that the court should ignore the business identity of the LLC and consider it a trade association or partnership conducted by Scott and Rodney Taylor is without merit. The simple fact of the matter is that the Taylor brothers are members of a properly formed LLC and are subject to all the benefits and requirements associated with conducting business through a separate legal entity. That legal entity contracted for insurance coverage and procured it.

The individual Taylors could have added themselves as additional insureds, but did not. They are bound by that decision. Rodney Taylor, as a member of Taylor Brothers Rental, LLC d/b/a Taylor Brothers Rental is not a named insured under the Hartford policy at issue. Thus, he may not stack UM coverage under that policy with other available coverage for this unfortunate accident, on this basis.

**Covered Auto**

However, Taylor has presented a second argument for coverage.  Relying on the Commercial Automobile Broad Form Endorsement (the "CABF"), Taylor argues that he was driving his personal automobile in the course and scope of his employment with the Named Insured, Taylor Brothers Rental, LLC, making it a "covered auto" under the terms of the CABF.  Thus, since he was occupying a "covered auto" at the time of his accident, he should also be afforded the policy's uninsured motorist coverage.  Essentially, Taylor is arguing that because he was operating what he describes as a covered automobile under the liability portion of the policy, then uninsured motorist coverage is created for him by the Policy and by operation of law pursuant to Miss. Code Ann. Section 83-11-101(1).

Hartford argues that Taylor's attempt to extrapolate his claim of "covered auto" status under the liability portion of the policy and his argument for the extension of the effect of the CABF to the Uninsured Motorist Endorsement portion/coverage of the Hartford Casualty policy are misguided.  The CABF endorsement upon which Taylor relies states as follows:

> **This endorsement modifies insurance provided under the following:**
>
> **BUSINESS AUTO COVERAGE FORM**
>
> **To the extent that the provisions of this endorsement provide broader benefits to the "Insured" than other provisions of the Coverage Form, the provisions of this endorsement apply.**

Among other enhancements, the endorsement includes the following:

-18-

**B.      Employees as Insureds**

**Paragraph A.1. – WHO IS AN INSURED – of SECTION II –**

**LIABILITY COVERAGE is amended to add:**

> **d.      Any "employee" of yours while using a covered "auto"
> you don't own, hire or borrow in your business or your
> personal affairs.**

Hartford argues of import is that the endorsement for Uninsured Motorists

Coverage, on the other hand, contains a separate definition of "insureds," which is

consistent with Miss. Code Ann. § 83-11-103(b) and reads as follows:

If the Named Insured is designated in the Declarations as:

> 1.      An individual, then the following are "insureds":
>
> > a.      The Named Insured and any "family members".
> > b.      Anyone else "occupying" a covered "auto" or a temporary
> > substitute for a "covered auto". The covered "auto" must be
> > out of service because of its breakdown, repair, servicing,
> > "loss" or destruction.
> > c.      Anyone for damages he or she is entitled to recover
> > because of "bodily injury" sustained by another "insured".
> > d.      The person who uses a covered "auto" with the Named
> > Insured's expressed or implied consent.
>
> 2.      A partnership, limited liability company, corporation or any other
> form of organization, then the following are "insureds":
>
> > a.      Anyone "occupying" a covered "auto" or a temporary
> > substitute for a "covered auto". The covered "auto" must be
> > out of service because of its breakdown, repair, servicing,
> > "loss" or destruction.
> > b.      Anyone for damages he or she is entitled to recover
> > because of "bodily injury" sustained by another "insured".
> > c.      The person who uses a covered "auto" with the Named
> > Insured's expressed or implied consent.
> > d.      The Named Insured for "property damage" only.

Quite frankly, a decision on coverage revolves around the rather basic

determination as to what is a "covered auto" under the policy language cited.  Taylor argues that because the CABF endorsement provides liability coverage for the use of his personal auto in the course and scope of his employment with the insured, Taylor Brothers Rental, LLC, his Tahoe was a "covered auto" on the date of the accident. Thus, under the UM endorsement, he was occupying a "covered auto" and is entitled to the coverage afforded thereunder.

Hartford, of course, disagrees, and contends that the only covered auto listed under the subject policy is the 2000 Ford model 9000 truck, bearing an "07" designation in the policy as set forth in the "Schedule of Covered Autos," for uninsured motorist coverage.  The policy language pertaining to "covered autos" states as follows:

**"SECTION I – COVERED AUTOS:**

**Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the"autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."**

**· · ·**

**A.  Description of Covered Auto Designation Symbols**

| Symbol | Description of Covered Auto Designation Symbols |
| --- | --- |
| **1** | **Any "Auto"** |
| | **· · ·** |
| **7** | **Specifically Described "Autos" - Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three.** |

**· · ·**

**SCHEDULE OF COVERED AUTOS YOU OWN (ITEM THREE OF THE DECLARATIONS)**

-20-

. . .

**00 FORD 9000 ID NO. 1FTNX20F9YEE29105**

. . .

In Item Two of the Declarations (referenced above)(Form HA 00 25 02 04), it is stated in pertinent part as follows:

**ITEM TWO – SCHEDULE OF COVERAGES AND COVERED AUTOS**

| Coverages | Covered Autos | Advance Premium |
|---|---|---|
| **LIABILITY** | **01** | **$1,097.00** |
| **AUTO MEDICAL PAYMENTS** | **07** | **$62.00** |
| **UNINSURED MOTORISTS** | **07** | **$43.00** |

Thus, Hartford argues that it is evident from the four corners of the Hartford Casualty policy itself that Taylor Brothers Rental, LLC procured Uninsured Motorist Coverage for a "07" or specifically described auto – a 2000 Ford 9000 truck -- for which a single premium was charged.  Hartford continues by asserting that the Named Insured was not charged, nor did the Named Insured pay, to have uninsured motorist coverage apply to any other vehicle, nor did the LLC own any other vehicle.  Thus, Hartford asserts that it is clear from the four corners of the policy that the Liability and Uninsured Motorist and Medical Payments coverage forms each have their own separate definitions, not only of who is an Insured, but also as to what constitutes a "covered auto" for purposes of that coverage form.

The court agrees with Hartford but for the CABF endorsement.  Clearly, that endorsement extended liability coverage to the non-owned auto of the employee of the Named Insured (Taylor) and operated by Taylor on the date of the accident.  That fact

is certainly foreseeable and contemplated by the argument presented by Hartford above wherein the policy specifically charges a premium for this liability coverage as referenced in the Schedule of Coverages and Covered Autos under Code 01.  What was equally foreseeable was that any policy of auto liability insurance written in this state must contain UM coverage or the insurer must obtain a written waiver therefor.

As previously stated, Mississippi law requires a carrier to provide a minimum of $25,000 in uninsured motorist benefits to certain categories of individuals, unless the coverage is expressly waived.  Miss. Code Ann. § 83-11-101.  A policy may provide more coverage than the amounts required by statute, and the policy provisions regarding the excess or additional coverage are "not subject to the provisions of" Sections 83-11-101 *et seq.  See Miss. Code Ann. § 83-11-111.  In Employers Mut. Cas. Co. v. Tompkins*, 490 So.2d 897 (Miss. 1986), the court stated:

> There is no requirement that the coverage shall be more than the minimum thus stated. As to any policy which grants the coverage required by the aforesaid Act, any "excess or additional coverage shall not be subject to the provisions of this article." Miss. Code Ann. § 83-11-111 (1972). The coverage Insured contends for in this case is excess or additional to that required by the statute and by the express terms of the statute is not subject to its provisions. It follows that the parties to this suit were free to contract as to uninsured motorist coverage in any respect so long as the required coverage is not cut down by the policy provisions.

490 So. 2d at 904 (quoting *Talbot v. State Farm Mutual Automobile Ins. Co.*, 291 So. 2d 699, 701 (Miss. 1974), abandoned on other grounds in *Government Employees Ins. Co. v. Brown*, 446 So. 2d 1002, 1006 (Miss. 1984)).

Hartford argues that if a policy fails to provide uninsured motorist coverage to a claimant determined to be an "insured" as defined by the policy, the statutory minimum is "read into the policy."  In *Meyers v. American States Ins. Co., 914 So. 2d 669* (Miss.

2005), the plaintiff was injured while driving his own vehicle during the course and scope of his employment.  His vehicle was covered under his employer's business automobile policy which included liability coverage for vehicles "owned by your employees . . . while used in your business . . . affairs."  *Id.* at 672.  The policy "made no provision for or against uninsured motorist coverage."  *Id.* at 676.  The court held that by operation of law, the absent uninsured motorist coverage would be "read into the policy," but only to the extent of the statutory minimum provided at the time, which was $10,000:

> May and Co.'s business automobile policy made no provision for or against uninsured motorist coverage. Therefore, we read into the contract the statutory minimum of $10,000.00 per person and $20,000.00 per accident. [. . . .] Therefore, Meyers is only entitled to $10,000.00 of uninsured motorist coverage under the May and Co. business automobile liability policy.

*Meyers v. American States Ins. Co.*, 914 So.2d at 676-77.

However, that is not the case here.  Hartford provided a UM limit of $1,000,000 in its casualty policy.  It is the opinion of this court that because the CABF endorsement unquestionably extended liability coverage to the Named Insured's employee Taylor's Tahoe in which he was engaged in the course and scope of his employment at the time of the accident, the Tahoe was a "covered auto" for purposes of UM coverage afforded under the policy, i.e., $1,000,000.

This court has previously held that "'the motor vehicle to which the policy applies' referenced in section 83-11-103(b) applies to motor vehicles covered by the underlying liability policy."  *Crane v. Liberty Mut. Ins. Co.* 19 F. Supp.2d 654, 659 (S.D. Miss. 1998).  The Hartford Policy does not define "covered auto."  A court must effect a

determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.  In interpreting an insurance policy the Mississippi Supreme Court looks to the policy as a whole, considering all relevant portions together, and whenever possible give operative effect to every provision in order to reach a reasonable overall result.  *J & W Foods Corp. v State Farm Mut. Auto Ins. Co.*, 723 So. 2d, 550, 552 (Miss. 1998) (citing *Cont'l Cas. Co. v. Hester*, 360 So. 2d 695, 697 (Miss. 1978)).  Clearly, Rodney Taylor's personal vehicle was covered for liability purposes by the Hartford CABF endorsement.  It is, therefore, an unreasonable interpretation of the Policy and Mississippi UM statutes to conclude that the parties excluded uninsured/underinsured motorist coverage from the subject policy for LLC members operating their personal vehicles in the course and scope of their employment with the LLC.

IT IS THEREFORE ORDERED AND ADJUDGED that the first Motion for Summary Judgment **[#31]** filed on behalf of the plaintiff is denied to the extent that Rodney Taylor claims to be a "Named Insured" under the subject policy.

IT IS FURTHER ORDERED AND ADJUDGE that Taylor's Second Motion for Summary Judgment **[#114]** is granted based on the court's conclusion that Rodney Taylor was occupying a "covered auto" on the date of the accident.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#60]** filed on behalf of the defendant is granted in part and denied in part as discussed herein.

SO ORDERED AND ADJUDGED this the 14th day of December, 2010.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE